I've disposed of one case before oral argument this week and I keep trying to use it on successive days. But now Durham v. Rural Metro. Maybe he thought we had disposed of the case too. Yes, Mr. Thomas. Ms. Thomas. Okay. I thought Gilliam being a female name, I guess. Okay. All right. All right. All right. All right.  All right, Your Honor. Talk to us about the PDA and treated the same as other persons not so affected. All right, Your Honor. My daughter's recently delivered a grandson and I have to tell her that she wasn't pregnant. She was just affected. That's right. That's right, Your Honor. May it please the court. Good morning. I'm Gillian Thomas appearing for Plaintiff Appellant Kimberlie Michelle Durham. Early in her pregnancy, Ms. Durham was counseled by her doctor to avoid lifting more than 50 pounds, a common restriction during pregnancy. But when Ms. Durham asked her employer, Rural Metro, to make it possible for her to comply with this directive and to temporarily reassign her, the company refused. And it refused even though it routinely made such reassignments for non-pregnant workers, unaffected by pregnancy. We got that and they drew the line in the proffered reason as job-related. I mean, I'm sorry, on the job as opposed to off the job. That's right, Your Honor. The difficult question, though, is treated the same, I think, is where the load is born. And the question is, is it the same to say, okay, the rule that applies to everybody is on the job, off the job. So you're treated the same. So, Your Honor, that was the question that was squarely before the Supreme Court in Young, a putatively gender-neutral policy that UPS had in place. It affected actually three categories of workers, including those injured on the job as well as those protected by the ADA or entitled to accommodations under the ADA, and then those who had lost their commercial driver's licenses, including due to non-medical reasons, like a DUI. And what the court in Young said was, we've got to look to the statute. We've got to look to the plain terms of the statute, which requires that pregnant workers be treated the same as others, similar in their ability or inability to work, and to raise an inference that that provision has been violated. It's a very low burden. It's not onerous. It's just some whose situation cannot be reasonably distinguished from her own. And we're just talking about the prima facie case. Exactly, Your Honor. And that's why the error of the district court here is so glaring. Young laid out a new prima facie standard specifically for accommodation cases. And so your argument is that rural accommodated not only on-the-job injuries but also ADA issues. Is that right? That's right. And they concede that. Now, they argue that the ADA accommodations that they afforded or the way of accommodating ADA-qualifying folks was the same policy that they extended to pregnant workers. The problem we have here is that Rural Metro was acquired by another company, and they took no steps to retain any of the documents that are relevant to this case, despite receiving a notification from counsel about imminent litigation. So we have no comparator evidence. We don't know how well they treated others under ADA. We don't know what they did for them. Well, how does that problem fit into the prima facie case structure? I am conflating them a bit, Your Honor, and I apologize. It does point out the second major error in the district court's reasoning, which was with respect to pretext, she did go on to say that there was no inference of discrimination because Ms. Durham couldn't show that there was anyone else besides this one little group, and that's a problem of Rural Metro's making, not Ms. Durham's. One little group meaning what? Those with on-the-job injuries. Didn't seem like a little group to me. It might be a big group. Not to me either, Your Honor, but in the eyes of the district court, yes. I didn't really understand the district court to ‑‑ I thought the district court's analysis pretty much stopped after it found there was no prima facie case. That is, it did not go on to say whether there's evidence of pretext or anything because it didn't find a prima facie case in the first place. Am I mistaken about that? You're not, Your Honor. I'm mainly pointing out that the court did in its own, just as I mistakenly did, somewhat conflated what the ultimate finding is and concluded that there was no triable issue at all on whether the policy was discriminatory. So from your point of view, if we agree with you on that point, then do we simply remand and say go back and get the prima facie part right and then leave the district courts to figure out what young actually means in this kind of case? Because the reason I raise that is, to me, the district court, in my view, messed up a bunch of stuff. But the underlying issue of an on‑the‑job, off‑the‑job distinction or can a company make any accommodations and not accommodate pregnant women across the board is a very important one. So should we say anything about that or should we just say next district court, take your best shot? Well, first of all, Your Honor, we would like a remand, not just for reconsideration of the prima facie issue, but we believe because of the many deficiencies in the record here and that the burden of production was not satisfied by Rural Metro, that in fact it should be remanded for trial. So they wouldn't get a chance to show their legitimate non‑discriminatory reason or that there's no evidence to show intentional discrimination even by inference? They stated already that their legitimate non‑discriminatory reason that she wasn't given the same accommodations late duty as those injured on the job is because she was not injured on the job. Yeah, so that circular reasoning is what the Supreme Court rejected. But then, well, you're saying we need to find as a matter of law that an on‑the‑job, off‑the‑job distinction is never adequate? No, Your Honor, but it's adequate for the prima facie case. But then that takes us back to you're saying don't decide this tough question, let it start out at another district court. The other thing I would say about the pretext issue with respect to the why we don't accommodate people who haven't been injured on the job is that their 30B6 deponent had no answer to that question. So what I'm saying is— Well, I understood that he had no answer for the deep reasoning behind it, but on its face you don't want to accommodate people who sprained their ankle playing basketball and you have workman's comp issues for on the job. So do you have to have a witness to give you the GC memo or does there have to be a GC memo when there's a fairly obvious reason? Well, the Supreme Court said— It may not be a good reason, but it's a fairly obvious reason. The Supreme Court said it's not just enough to make these per se distinctions or even just to rely on a worker's comp statute. The employer has to show that that reason for denying accommodation to pregnant workers and not extending that same benefit must be sufficiently strong to justify the burden on the pregnant worker. Is it your position that as a matter of law that can't be satisfied? That is, this distinction, which is a fairly plausible and obvious distinction, can't be sufficient as a matter of law? For the prima facie case, Your Honor. Okay, but then that gets us— At the pre-tech stage, in answer to your question about what to do on remand, I'm simply saying that they have put forward a reason for why pregnant workers don't get the same benefit, but the record already reflects that that reason is completely insufficient, both because they have no reason to provide and because, in fact, her direct supervisor said he was perfectly happy to create a job for her, which is exactly what they did. Well, he's perfectly happy if somebody told him to. No, Your Honor. He spoke to his— But the supervisors don't get to make the policy, and it is entirely rational and probable to the point we have to take notice of the possibility that on-the-job injuries cost a company a tremendous amount if they let the employee file for workers' comp. I do understand that, Your Honor. So if you have a small number of featherbedding or create positions or whatever you call them, it's in the company's best financial interest, which is almost always a sufficient neutral reason to give those positions to folks who will file for workers' comp if you don't keep them on the payroll. I mean, that is just self-evident. Now, what happened in this case, and let's be candid about it, and we're going to give you a little bit more time if you need it. But what happened in this case is you've got a company that's got 10,000 employees in 25 different states according to the record in the briefs, and the word didn't reach down to all the supervisors and all the rest. Here is—you know the policy. Here is the reason behind it. They just didn't convey that, and what you're concerned about is if we go back and open up or just send it back for the district court to do a do-over, they're going to get the word downstream or they'll have an affidavit from company headquarters, wherever it is, saying this is the reason for the policy. And then you'll have to meet that, which is how it ought to work. If I may, Your Honor, when I'm talking about the reason here, the sufficiently strong reason, I'm not saying that light-duty policies for people who have been injured on the job don't make financial sense for companies. That's understood. What I'm talking about is why, in a given case, and that's why it shouldn't be at the prima facie stage, it should be at the pre-tech stage, after discovery, workforce by workforce, workplace by workplace, which are all distinct and have distinct abilities and needs, why couldn't this pregnant worker have also been extended this benefit? The Second Circuit in Lake found that that was sufficient to create pretext. Are you saying that if they had come forward and said, the reason for our policy is because we can't afford to not accommodate people who are injured on the job because of workers' compensation, but we're not going to extend it to anybody else because we can't afford that also, then that would be a different case. Then, in that case, they would have demonstrated a legitimate business reason, and in the absence of any evidence by your client, the case would be over. Would you agree with that? With the caveat, Your Honor, that Young also said, and again, we're in uncharted territory. There has not been a lot of case law post-Young that has made it to the pre-tech stage. But what Young said is that mere cost or convenience also is not sufficiently strong. Well, let me ask it to you this way. Is your problem here that, in this case, all they say is, we just accommodate on-the-job injury, period? That's it. They don't say why they just accommodate on-the-job injury. And so it's their burden of production to come forward with a legitimate business reason. And a jury might find, after they hear the testimony about, well, we don't know why we do this or whatever, that that could be pretext. Right? Is that what you're saying? But that is a credibility call as to whether they're believable or not when there's no evidence as to why they are coming forward with this, even though we've asked four different people it, and nobody seems to know why that's the reason. Is that what your position is? It is, Your Honor. And I'm drawn to the specific language in Young and the sort of animating purpose of Young, which is why, when you've accommodated this other group, can you not accommodate pregnancy as well? It's less about the decision to accommodate folks with on-the-job injuries, but rather why couldn't you also do it for the pregnant worker too? And I'll push back a little bit, Chief Judge, on your point about this being a lower-level person just trying to do a favor. The PDA, ADA policy actually provided for HR and the manager to work together in figuring out what an accommodation could be. And their position in saying that there were no available jobs for her, for which they also have no documentary evidence, was based purely on the word of the local manager, her supervisor, that he didn't have anything. Well, but I read the record, and maybe this is a credibility determination, I don't know, is that create a job doesn't mean a useful job, doesn't mean an economical job. It's, yeah, you tell me to create a job, and I'll do it. And the problem I have is one can always accommodate a particular plaintiff. A big company or even a small company, one or two people never hurts. But doesn't that collapse into saying that the pregnant claimant is always going to win, even though the person who injured themselves playing basketball or lifting a car or saving a person from a burning building, they all lose because it isn't a reasonable distinction on the job, off the job. Isn't that, I mean, how would you distinguish a policy that could work? Is there any policy a company could have that excluded pregnant women? Not facially, Your Honor, no. I'm sorry, I'm sorry, that doesn't make sense. Suppose I said nobody will get a created job. If you can't do the job you're in, you can't work for us. I think that would work, Your Honor, although you might have a disparate impact claim. But I think that would work. I was answering the specific, I understood exclusion to mean we accommodate these people but not pregnancy. I mean, that's what Gilbert was, and that's why the PDA was enacted. I understand at the prima facie stage, but are you saying young? I mean, the problem I have is that the way you put the strength of the argument, it's hard to see how your view of young leaves any policy available. Well, for instance, Your Honor, I think that we would concede that certain policies that the court characterized as triggering a most favored nation status that would be impermissible, such as people in especially dangerous jobs or people with a certain level of seniority, those are certain distinctions that would work. But I am going to push back. So you think seniority would, like only to people with 10 years' service would be good enough? I mean, that was conceded during oral argument at young, Your Honor, and that was cited in Breyer's opinion. Those are distinctions. Again, there might be a disparate impact claim there, but in terms of disparate treatment. But I am going to push back. Okay. Is it that they didn't have enough logic? Maybe I'm wrong. To me, on the job, off the job makes as much sense as more than 10 years, less than 10 years. Well, on the job, off the job, first of all, I do want to just get us back in center that that should not satisfy the prima facie case. And then when you get to the pretext stage, I understand that that seems a sensible distinction, but the question is why couldn't pregnant workers be accommodated to. But doesn't young end up with raises and inference of intentional discrimination? And any of these fairly bright-line rules, seniority, on the job, off the job, how can you get to an inference of intentional discrimination when you're discriminating against the guy with the basketball injury, the person who saved somebody from a burning building? How can that possibly be that you're intentionally discriminating against pregnant women by doing that? Well, Congress didn't make a decision that people who hurt their backs playing basketball face systemic economic discrimination because of that condition. They made those findings with pregnancy. And so that's why. And said you can't discriminate against them. That's the purpose. That's right. If we want to get to purpose. But they didn't say you had to discriminate in favor of. That's correct, Your Honor. But the question I am asking this court to demand of the respondent here, excuse me, the appellee here, is why not pregnancy? I'm not asking you to. How about if the response is because we don't have to, and the reason we don't have to is we treat everybody the same. If you get injured on the job, we'll accommodate you. If your injury or disability or effect is because of off the job, we don't accommodate you. Because the Supreme Court, Your Honor, with respect, the Supreme Court said that kind of bright line is not acceptable any longer. That's precisely why they took Grant and Serve. We don't have to decide in every case. We are looking at the facts in this case, right? So in this case, is the problem here that four different people were asked, what is the reason for this policy? And everyone said, well, I don't know. And that in and of itself, at least for purposes of pretext, it doesn't meet the burden to show why it is a legitimate business reason. Isn't that the problem here? Absolutely. And I'd go further, Your Honor, that it wasn't just about on-the-job injury, the reason for that policy, but also why wasn't she otherwise accommodated? We don't have any job listings. We don't know anything about what else could have been done to you. I mean, if they had said, if everybody who was asked had said, look, we would like to accommodate everybody, but we can't. It's expensive. We have to accommodate our people who are injured on the job because it's more expensive for us to have to pay workers' comp than it is to deal with this, right? But we can't expand it to everybody because it's too expensive for us to do it to everybody. So we have made a business decision to do this. If they had done that, if they had said that, then that would be done. The problem is there's this question as to why they did it, and no one seems to know. And in and of itself, on this record, on this particular record, that raises a question, well, was it really a legitimate business reason or were you trying to cover because you just didn't want to cover pregnant people? Right. Right, Your Honor. I mean, the record testimony, or not testimony, but account of Ms. Durham of her phone call with HR where the first statement was, this is what we do for pregnancy. The only option for you is unpaid leave. The PDA and Young demand more than that of an employer. I'm sorry that we got a bit away from talking about what a workplace that does grapple with these issues might actually look like. We've given you eight extra moments. We really have. Thank you, Your Honor. Let's hear from Ms. Wilber, and we will give her eight more with the hope that she doesn't need them all. I'll start her at 23. Valerie. May it please the Court. My name is Heidi Wilber, and I'm representing the defendant, Appali, Rural Metro Corporation. The question at the heart of this dispute is whether an employee can maintain a light-duty policy that is only offered to workers injured on the job without violating the Pregnancy Discrimination Act, as interpreted by the Supreme Court in Young v. UPS. As I'll argue today, Young v. UPS does not prohibit employers from maintaining a light-duty policy like the one at issue in this case. Additionally, the district court in this case correctly held that Ms. Durham failed to satisfy her burden in demonstrating that Rural Metro intentionally treated her less favorably because of her pregnancy. There's three key points I want to make today. What if the reason for the on-the-job, off-the-job was to exclude pregnant women? Well, there's no evidence that that was the case. I know, but there's no evidence it wasn't. We don't know. It's just the policy. Well, the policy itself in this case does explain a little bit about the purpose of the policy. How so? It mentions that it is the purpose is to get injured workers to transition them back to work. There's also some testimony from Mr. Crowell, who was Ms. Durham's supervisor, that they had to do this for light-duty workers. So they don't have testimony about that. Why did they have to do it for light-duty workers? I don't think he explains that in the record. Well, I mean, suppose he said we have to do it because they're not pregnant. Well, that would be a problem, but there's no testimony. But don't you have to justify the neutral reason on some grounds that doesn't discriminate against pregnant women because they're pregnant? Well, they have to articulate a neutral reason. And in this case, the articulated reason is that they make a differentiation between workers who are injured on the job and those who are not. And that should be sufficient under— That's true, but in order to show pretext, the plaintiff just has to show that that reason might be suspect. And why can't the plaintiff show that it might be suspect when nobody can explain what the basis is for that reason? Well, I think they still can't show that it's suspect because everybody had the same reason throughout the record. So everyone said this is the reason because of this light-duty work. But let me ask you this. You would agree that if the reason was because they didn't want to cover pregnant people, that would be a problem, right? That would be a problem. Okay. The problem is that they were asked what the reason is and nobody gave an answer. So why isn't that a possible reason as to why they had the policy? Why isn't that enough to make it at least a material issue of fact as to why they had the policy? Well, I think that takes the employer's burden to a step that is not typically required in these cases. Most of the time, the existence of a policy or an explanation of a policy and articulation of a policy is enough rather than going back historically. Why was this enacted? What were the explanations for how this came to affect? If you have a policy saying a worker will be fired after three absences, employers are typically not required to explain where that came from or whether they did that to discriminate against the group. They're just, it's usually not required. Although Young seems to suggest that you do kind of have to explain, right? I mean, Young has all these different categories, the people who lost their commercial driver's licenses, the people who were injured on the job, whatever. There's a bunch of different categories, but not pregnant women. And so the prima facie case is met there. And it doesn't really get to the pretext issue, but it kind of suggests that if you can't explain, that you need to explain why all these different groups are covered, but pregnant women are not, right? I mean, would you agree that that's kind of the implication of Young? Not exactly. I would say that in Young, the issue was that because the employer accommodates so many different groups, that it was hard to find a way to distinguish a pregnant employee from members in those groups. The Fourth Circuit really had to sort of bend over backwards to say, well, there's a legal obstacle in the way for DOT certification. There's all these other justifications. And the effect of having an aggregation of so many policies that were accommodating so many different types of employees was that it had the effect of excluding pregnant employees. But in this case, we have just one policy, the on-the-job injury policy, and the people who are excluded from that policy are not just pregnant workers, so it's not just people who are identified by that status, but also many other types of employees. I mean, it would have been so easy for them to just say, if the reason was what we've discussed, right? It would be just expensive workers' compensation, blah, blah, blah. It would be so easy for them to say that. I mean, why does that not beg the question, the fact that multiple people did not say that and had no answer to that, that maybe they were covering for pregnancy discrimination? Why does that not beg that question? I think in this case, there's a unique situation where the company, a lot of these employees were no longer there anymore, and the company was absorbed by another company, and so there's sort of a lack of support. But it's your burden, right? It's your client's burden to come forward and give the legitimate business reason. It was within your client's control to say, we're doing it for, you know, it's too expensive to have to accommodate everybody. We have to do the injured on the job people because it's less expensive than just doing straight workers' comp. I mean, that was your burden to come forward with that. If anybody would have that information, it would be your client. Why is it unfair to put your client to that burden? Well, I think that the client did come forward with some evidence about having to do this for light duty, and the fact that the people who were testifying were lower-level managers who maybe didn't have that institutional knowledge and didn't want to guess. Is there a difference in stating legitimate nondiscriminatory reason under the PDA as opposed to Title VII? Because I haven't had many PDA cases. I've had a lot of Title VII cases, and usually you state the policy, and then it's up to the plaintiff to undermine it. Now, is there a difference there that makes it clear that the employer has to give all the reasoning behind the policy? I would equate it to being similar to Title VII in that they still just have to articulate the burden. I mean, if it's a bad policy, it would be fairly easy to undermine if it's just a question of grading their papers of how good the litigating attorney was or whether she could find the correct general counsel up in Omaha or wherever. That's a different matter, isn't it? Yes. Well, doesn't Young actually say this burden applies only in PDA cases? Doesn't it say that? Yes. So, don't we have to consider that fact? You have to consider it, but also with the added requirement of showing that there's a significant burden on pregnant workers. Well, isn't that easy? The burden is she doesn't get accommodated. She doesn't get paid. Right, but in looking at it comparatively, are pregnant workers facing a significant burden as compared to other employees? So, Young does speak in terms of the pretext in terms of categories and that pregnant women were categorically excluded in the Young decision. Here, that's not the case. And again— Well, wait a minute. How can you say they're not categorically excluded? With respect to pregnancy, I suppose if a pregnant woman were injured on the job, then she would get accommodated, right? That's correct. But on the other hand, a pregnant woman off the job, if not injured otherwise, is categorically excluded, just the same way that people who injure themselves in a car wreck or playing basketball are categorically excluded. But the burden would not be more significant on pregnant women. More significant. The question is, does Young, in all the many things Young says, just talk about more burden or does it just talk about a significant burden? I think in a disparate treatment case where we're talking about comparing employees, you have to look at the comparison of employees there. Comparison is because we're trying to find intentional discrimination? Yes. In this record, is there evidence indicating that this policy originated with the prior company and that there may be a different policy for the 10,000-employee, 25-state new company? I don't believe the new policy of the new company is in the record. We just have the old one at this time. All right. But the record establishes this came unchanged from the old company? Yes. And so there's no way of knowing whether the people at the old company adopted it in order to discriminate against pregnant people because your client didn't present any evidence on that, right? Well, there's no evidence about how the policy was initially created, but this is a policy that is an extremely common type of policy that even other courts and even Judge Alito's concurrence in Young recognizes that this is a common and neutral reason for making a distinction, the distinction between on-the-job injuries and off-the-job injuries. So if you were litigating the next case on deposition, you would ask, did you adopt this policy to discriminate against pregnant women? That would be a good question to include.  But, of course, this record indicates they'd say, I don't know, I didn't adopt the policy. Right, but there was no indication that it was done with any inference of discrimination toward pregnant workers. I want to jump back to another one of my points, which is to talk more about the prima facie analysis. Even after Young, a court is still allowed to consider similarities and differences between workers beyond the nature of their work limitations. Durham is essentially asking this court to hold that a plaintiff essentially automatically establishes a prima facie case of discrimination whenever an employer has a policy that provides light duty to employees with occupational injuries and not to pregnant workers. But what's the difference if it automatically establishes it, if you can get rid of it immediately at the pretext stage by just presenting the reason that we've been discussing, which is workers' comp stuff? Well, I think there still is a distinction in terms of how the burdens shift and in terms of how the district court handled it in this case. Well, let me ask you a question, though. Why does it matter ultimately? I mean, it's not like it imposes any additional burden on the employer. The employer is the one moving for summary judgment. The employer is going to come forward with a legitimate business reason regardless just in case the district court finds that there was a prima facie case. And sometimes the district court will just say, it doesn't matter whether there is a prima facie case because we have a legitimate business reason and we don't have evidence of pretext. So why is it unfair to the employer if it automatically results in there being a prima facie case under circumstances like this as long as at the pretext stage the employer can come forward with a legitimate business reason and get summary judgment? I wouldn't say that it's unfair to the employer, but I would say that Young definitely still leaves the door open for a court to make a distinction at the prima facie stage. So in looking at the text of the fourth prong of the prima facie test, which comes from the PDA, the PDA states that pregnant women shall be treated the same as other persons, not so affected but similar in their inability or inability to work. In Young, the Supreme Court asked a number of questions about that language and asked does that clause mean that courts can only compare workers in respect to their work limitations, or does it mean that they can consider other similarities and differences in determining who other persons are? So under Young's position, if a court is only permitted to consider work limitations, if a pregnant worker with a lifting restriction is deemed similar to a non-pregnant worker with a lifting restriction, regardless of whether there's any other reason to distinguish the employees, I think the Supreme Court in Young clearly goes on to reject that approach. Looking at the text of the PDA, which requires employers to treat workers the same as other persons rather than any other persons or all other persons, it also compares pregnant employees to persons who are similar in their ability to work rather than identical. And the Supreme Court- But doesn't that make it broader? I mean, if you're similar in your ability to work, then that is broader than being the same as your ability to work, isn't it? It is, but- And in this case, we have same as ability to work, which is narrower than is required, right? Because we have people who are pregnant who have lifting restrictions and people who are injured on the job who have lifting restrictions. They are exactly the same in their ability to work as far as the lifting restrictions go. Why doesn't that qualify under the similar in their ability to work language? Well, it's really the other person factor that comes into play here. And again, in Young, the Supreme Court posed the following question, acknowledging that Congress clearly intended to allow differences in treatment arising out of special duties, special service, and special need. Why wouldn't it also allow courts to take account of differences of special causes, which by recognizing special causes, such as, as it mentions, people who are injured in extra-hazardous conditions, the court is implicitly giving legitimacy to policies providing special treatment to workers injured on the job. If you look at the application of Young's, of the prima facie test in Young, it also demonstrates that the court can engage in comparison. So in Young, of course, the employer accommodated numerous categories of employees, not just who were injured on the job, but also those with disabilities, those who lost their DOT certification, and there was evidence that they had some. I thought your company accommodated people who had disabilities, at least as far as required by the ADA. Yes, they do. And there's multiple witnesses who testified that they interpreted that policy to also include pregnant workers as well. And so that policy was applying to Durham in this case. I'm sorry. So does that mean that she would have been able to be protected under the ADA to the extent that she qualified? Right. Is that what you meant by that? That's correct. So Rural Metro's policy was for any employee with a non-work-related medical condition, and both Mindy Reeves and Eric Morris testified that that included pregnant workers and Young. Although the problem there is it's a 90-day policy, and the maximum it can be extended to is six months. But pregnancy lasts for nine months. And then after the delivery, I mean, there might be additional complications. So on its face, isn't that problematic? How does that accommodate a pregnant person to the same extent? Well, the same problem would exist with their light-duty policy, which was also supposed to be limited to three months and could be extended for longer, but no more than six months. So they have the same issue in terms of time. But for the accommodation policy, one of the accommodations in that policy would be reassignment. And in this case, there's lots of evidence in the record that Rural Metro was considering trying to reassign Ms. Durham, but there simply was no positions available. This is a small organization. Mr. Crowell only supervised approximately eight to ten dispatchers. And there's significant evidence of him testifying that he did look into whether those positions were available. And with only eight to ten positions at issue, it was very easy for him to determine that there were none available at the time. And if you had a person with an on-the-job injury, what, they would have effectively, I guess Judge Carnes used the word feather bedding, you would have just created like another dispatcher and have them sit in the corner. Actually, they testified that they had not created any dispatcher positions for light duty. They created something else. It was more of creating a temporary work assignment, so some filing in the office. And that was even still subject to availability. Although, were there six people that she cited in the record that were accommodated in that way? It was three or four. And some of those accommodations only lasted a matter of days. So these weren't employees who were receiving nine months of, you know, job duties where they were shredding paperwork or filing things. It was meant to be more of a short-term assignment, as is explained in the transitional work policy. So back to the application of the prima facie test. The court held that there was a genuine dispute of material fact as to whether Young satisfied the fourth prong of the prima facie test. And I just want to draw the court's attention to two key statements in that application of that test here. First of all, on page 231 of the opinion, the court holds that there's a genuine dispute of material fact as to whether UPS provided more favorable treatment to at least some employees whose situation cannot reasonably be distinguished from Young's. And so in making that statement, the court gives a window into its logic and suggests that the standard for comparators at the prima facie stage is whether they're employees whose situation cannot reasonably be distinguished from the plaintiffs. So this is one clue as to how the court is looking to define other persons. I'm sorry, you're quoting that from page 231. Is that the U.S. report site? Yes. Or did I hear you when you said 231? Yes, 231. Okay, thank you. Yes. Okay, so U.S., not the Supreme Court reporter. Okay, thank you. Additionally, the Supreme Court describes the plaintiff's burden at the prima facie stage as not onerous because the plaintiff is not required to show that those whom the employer favored and those whom the employer disfavored are similar in all but the protective ways. This statement is perfectly illustrated by Young, where the employer carved out so many reasons for accommodating various types of employees that it made it difficult, if not impossible, to distinguish Young's situation from all of the people who'd been accommodated. Therefore, Young was similar to at least some of these employees in all ways except her protected status. That's not the case in this case, where it's very easy to reasonably distinguish between Durham and the employees who received light-duty accommodations, and you don't have to do so by relying on their pregnant status. Durham was not similar to employees in the transitional work program because she was not injured on the job, and she's joined in that distinction by numerous other individuals, individuals who are disabled, individuals with off-the-job injuries, and perhaps other individuals as well. And therefore, the district court properly determined that Durham's failure to submit any evidence that employees with non-work-related injuries doomed her case. Another point I want to make today is that Young versus UPS does allow employers to offer special accommodations to workers with occupational injuries. Durham suggests that the Young decision was essentially a death knell for light-duty policies restricted to individuals injured on the job, but that reading of Young is not supported by the decision. First of all, Young repeatedly acknowledges that the PDA was not intended to grant pregnant workers most favored nation status. The Supreme Court considered and explicitly rejected Young's argument that if any subset of workers receives an accommodation, that accommodation must also be given to pregnant employees. And the Supreme Court addressed this issue head-on in several places, including when it explicitly rejected EEOC guidance which sought to make a hard-line rule that employers cannot deny light-duty to pregnant employees based on a policy that limits light-duty to workers injured on the job. Also, as I mentioned earlier, the court specifically questions any rule that would prohibit differences in treatment arising out of special causes. Furthermore, the Supreme Court doesn't explicitly address or take issue with the outcome of some of the lower court rulings that permitted employers to distinguish between workers injured on the job and others. But again, all that is taken care of at the pretext stage, the legitimate business interest stage, isn't it? It can be, yes, but it can also be addressed. I don't think Young prohibits a court from addressing this at the prima facie stage if there's a clear reason to distinguish the employees. So in conclusion, this case is easily distinguishable from Young, which involved an aggregation of policies that have the combined effect of singling out pregnant workers. Can I just ask you a question about this, though? I mean, under your analysis, let's assume that there was evidence that the reason that they did it was to discriminate against pregnant people, right? There still wouldn't be a prima facie case under your analysis, right? Isn't that a problem? I don't think it's a given that they wouldn't have a prima facie case. How could they have a prima facie case? It's exactly the same category that they're comparing to people who are injured on the job. People who are injured on the job, but there would be something in that policy that would make it exclusive to pregnant, that would demonstrate disparate treatment. I would thought that your answer would be that McDonnell Douglas is not the only way to get past summary judgment, and that if you had evidence they did it to discriminate against pregnant women, you went under the first clause. That's true. The ultimate goal for a plaintiff here is that they have to prove that there's an inference of intentional discrimination, and Durham didn't satisfy that burden here. I think that's my time. Thank you. Thank you. Ms. Thomas, I have a question. Suppose you had a trucking company, low litigation budget, and they had a policy not to hire anyone who had two DUI convictions or more. And I asked the corporate designation, who was the owner's brother-in-law, why do you have that policy? Beats me. I have no idea, but it's the policy. Couldn't we take notice that it's obvious why they have that policy? I mean, do you have to have somebody come up and say, we don't want drunks driving these big trucks, for which we're liable? Your Honor, I'll go back to what I noted in my initial argument. The inquiry under Young is less about why do they favor one particular group. It's why is pregnancy disfavored? My question is, why are people with DUIs disfavored? I forget. The guy's of a minority race. Okay. And he says they wouldn't hire me because I'm of a minority race, or majority. It works both ways these days. And the response is, he had two DUI convictions. We don't hire people with two DUI convictions. Why? I don't know. I wasn't there when they made the policy. I personally have one and a half myself. I wish they hadn't done it. I mean, do you tell me that we have to find that's not a race-neutral reason? It is a race-neutral reason, Your Honor, but I think people with DUI convictions aren't protected by us. I know that. I know that. I'm just simply saying people of a minority race, a majority race, any race, are protected. And he says, the reason they didn't hire me is my race. And the company says, no, you had two DUI convictions. And they don't explain the basis for that policy. Right. It's obvious. It's as obvious as having a policy that we will find a job for someone who's injured on the job. So, Your Honor, I think it's because we're dealing—the Pregnancy Discrimination Act has two clauses. The example you've given is analogous to a Clause 1 claim. So, if this were a claim about Ms. Durham not getting promoted or being denied or being demoted, we would be in the kind of analytical framework that you're talking about. But it's baked into Clause 2 that pregnant workers are to be treated the same as others, similar in their ability or inability to work. That raises the inference of discrimination. But then that—doesn't that get us to—I mean, it's circular. We keep going around it. But that sounds like the most favored nation clause that Young rejects. Now, Young said over here, Young says all sorts of good things for you. And over here, Young says, well, we're not really doing that. A typical broad opinion. No comments. Yeah. But let me start. I'm sorry. You go. Can she answer mine? Sure. I mean, is that kind of the problem? Well, I would push back, Your Honor, that that's why there's a modified prima facie analysis now for these cases. But absolutely at the pretext stage, our position is not that every pregnant worker gets every accommodation that she wants. That's the answer. But it's that before Young, all of these cases were short-circuited in precisely the same way that it was below. That employers were allowed to designate certain workers as not similar and courts were buying it because there wasn't evidence on the record that it was enacted with an invidious purpose. Counsel, just so we're clear, your response to my question earlier was basically your question doesn't matter. But I want to make sure we have an answer to it. In my double DUI failure to hire trucking company, they wouldn't have to explain the policy. It is self-evident. And that would make it a prima facie case, right? Are you saying that they've not made – I'm sorry. I didn't understand. That would destroy the prima facie case. I think that's right. I think that's right, Your Honor. I mean, I think you can take judicial notice of certain things about why certain policies are enacted. But that's why I keep emphasizing –  Absolutely, Your Honor. Two responses. Number one, Young said no cost as the reason. So that's number one. But number two is – You can't mean that. It can't mean no cost. I think what I think – It means that you can't discriminate against pregnant women on cost basis. But it can't mean that you have to accommodate them regardless of cost when you wouldn't accommodate a non-pregnant person with the same disability. What I think, Your Honor – Do you agree with me? I agree that this piece of Young, the pretext test, has been virtually unexplored at all. And getting back to Judge Boggs' question a while back, I think we would welcome guidance from this court about what is supposed to happen at that pretext stage. And I think that where we'll probably end up somewhere down the line is with a test that's akin to undue hardship. Of course, if it's going to break a business to have to accommodate all pregnant workers, that's probably not going to support a pretext finding. But what I'm asking is that we remember that this is about individual pregnant workers. Why was this individual not able to be accommodated? And I would push back also a bit on the need to show that a policy was adopted with intent to discriminate. That was the holding in Gilbert, that there wasn't intent to discriminate in the record. And that's how we got Clause 2 of the PDA. Doesn't Young end up saying that the bottom line, after all this stuff, is enough evidence to raise an inference of intentional discrimination? Intentional discrimination vis-a-vis excluding this pregnant worker. Not figuring out a way to accommodate her. And so, for instance, I mean, we were talking about workability. Okay, well, so you're saying that this must be done at the individual worker stage, even though it's clear that there is a policy that is being applied by its own terms. We may not have logic for it. But because, I mean, it's always going to be the case that you can accommodate one worker without breaking the company, isn't it? That if you read the part of Young that talks about cost to mean that you can't take, that the fact that it costs something can't be applied, you would always win. Because you can always accommodate one person, can't you? I do understand, Your Honor, and I agree with you that, of course, it's always cost. As a practitioner in this area and the people who brought the Young case forward can attest, what pregnant workers are facing is exactly what Ms. Durham did, which is they have a restriction, they come forward with a note, and they're told, we just don't do that. So Young is intended to at least spur employers to be thinking about how can we not just brush people aside that way. How can we make accommodations? And maybe they accommodate the first three pregnant workers who come forward, but they can't do the fourth because they're a small employer. But if we order them to accommodate her, we can't say, and the next two in line. That doesn't work. It's great to have a dialogue with the employer, but we have to decide the cases. And our decisions sometimes make law. And we have to be cognizant of the practicalities and ramifications of them on both sides. I understand, Your Honor. We have your argument, and you're welcome for all the extra time. And we'll take that case under submission. And I think well argued by both sides. Much better argued than the Young opinion was written. We'll stand in recess until tomorrow. All rise.